**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BOBBY DIRICKSON,

    Plaintiff,

v.                                      Civ. No. 23-562 MLG/KK

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF OTERO*, et al.*,

    Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION[1]**

The following motions are before Court: (1) the Motion for Summary Judgment filed by

Defendants the Board of County Commissioners of the County of Otero ("Board"), Nena Sisler,

Javier Sifuentes, and Carol Barela (collectively, "County Defendants")[2] (Doc. 36) on March 3,

2025; and, (2) the Motion to Apply the Equitable Tolling Doctrine (Doc. 45) filed by Plaintiff

Bobby Dirickson on May 2, 2025. Having reviewed the parties' submissions, the record, and the

relevant law, and being otherwise sufficiently advised, I RECOMMEND that: (1) the County

Defendants' Motion be GRANTED IN PART and DENIED IN PART; (2) Plaintiff's Motion be

DENIED; and, (3) the Court enter summary judgment in favor of the County Defendants and

---

[1] By an Order of Reference filed February 12, 2025, United States District Judge Matthew L. Garcia referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (Doc. 33.)

[2] In their Motion, the County Defendants list former Defendants FNU Olmos, Katherine Otero, Sabrina Hernandon, and KC Bonnell as moving parties. (Doc. 36 at 1.) However, the Court dismissed Plaintiff's claims against these individuals on December 12, 2024, and Plaintiff did not file amended claims against them within the time the Court allowed. (Doc. 26 at 3-5, 7.) The County Defendants' request for summary judgment as to these former Defendants is therefore moot. Nevertheless, I note that my analysis of the present Motions would apply with equal force to these individuals, and they would be entitled to the same relief as Defendants the Board, Sisler, Sifuentes, and Barela, if they had remained in the case.

Defendants Rebecca Sanchen[3] and Donna Mohr on Plaintiff's Section 1983 claims alleging

deliberate indifference to his gunshot wound, but deny summary judgment on his remaining

claims.[4]

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a prisoner proceeding *pro se*, mailed his original complaint to the Clerk of the

Court on June 30, 2023, in the form of a letter.[5] (Doc. 1.) The sum total of the substance of this

complaint states:

> Can you please file this complaint for me for a violation of my 8th, 5th, 14th
> Amendment civil rights against: 1.) the Board of County Commissioners of the
> County of Otero[, and] 2.) Nina Sizzler [sic] Otero County Detention Center
> Administrator[.] Please also send me a blank 42 U.S.C. 1983 application[.]

(*Id.* at 1.) On July 5, 2023, the Clerk sent Plaintiff a blank Section 1983 form complaint, and on

October 5, 2023, the Court ordered Plaintiff to cure the deficiencies in his original complaint. (Doc.

2 at 1.)

On October 6, 2023, Plaintiff filed a first amended complaint ("FAC"), again asserting

claims against the Board and "Nina Sizzler." (Doc. 3 at 1-2.) In the FAC, Plaintiff alleged that,

while detained at the Otero County Detention Center ("OCDC"), he received constitutionally

---

[3] In medical records attached to Plaintiff's first amended complaint, Defendant Sanchen's last name appears to be spelled "Sachen." (*See* Doc. 3 at 81, 183, 185.) Nevertheless, in these Proposed Findings and Recommended Disposition, I will use the last name "Sanchen," as Plaintiff does in his pleadings.

[4] Defendants Sanchen and Mohr are among the six Defendants who remain in the case following the Court's December 12, 2024 Order. (Doc. 26 at 3-5, 7.) Defendants Sanchen and Mohr are not listed as moving parties in the County Defendants' Motion—possibly because they worked for the OCDC's medical contractor rather than the OCDC itself—nor have they answered or otherwise appeared in this action. (*See* Docs. 26, 35, 36, 46-47.) However, my analysis of the present Motions applies with equal force to these Defendants, and I therefore recommend that the Court grant them, as well as the County Defendants, summary judgment on Plaintiff's Section 1983 claims alleging deliberate indifference to his gunshot wound.

[5] Plaintiff dated the letter June 29, 2023, but it is postmarked June 30, 2023. (Doc. 1 at 1-2.) The Clerk received and filed it on July 3, 2023. (*Id.*)

inadequate medical care for a pre-detention gunshot wound to his neck, and for a life-threatening cardiac condition that caused painful, debilitating swelling in his lower extremities. (*Id.* at 8-11.) On these bases, Plaintiff asserted claims under 42 U.S.C. § 1983 for violations of his Fifth, Eighth, and Fourteenth Amendment rights. (*Id.* at 3-4.)

On September 3, 2024, Plaintiff filed a second amended complaint ("SAC"), asserting claims against thirty-three Defendants including Defendants the Board, Sisler, Sifuentes, Barela, Sanchen, and Mohr. (Doc. 22 at 1-7.) In the SAC, Plaintiff alleges the following facts:

Plaintiff was arrested on March 1, 2020, and was treated for a gunshot wound to his neck at the Gerald Champion Regional Medical Center ("GCRMC") on March 12, 2020.[6] (*Id.* at 8.) The GCRMC's discharge instructions indicated that Plaintiff should be "treated daily by someone who was wound care certified," and if no one at the OCDC was wound care certified, he should be transported back to the GCRMC daily for such care. (*Id.*) Although the OCDC lacked would care certified staff, Defendant Sisler instructed staff not to transport Plaintiff to the GCRMC and to instead treat his gunshot wound "the best they could." (*Id.* at 8, 11.)

"On several occasions, the medical staff were unable to treat the wound and didn't even change the bandages[.]" (*Id.* at 8–9.) "After three or four days … a sympathetic nurse finally attempted to clean and repack the wound but made it clear that she was not wound certified." (*Id.* at 9.) Although Defendant Sanchen tried to treat the wound in March, May, and June 2020, she was not wound care certified and did not report her concerns to her supervisors. (*Id.* at 12.) "[D]ue to [the] lack

---

[6] In his response to the County Defendants' Motion, Plaintiff asserts that he sustained the gunshot wound to his neck in February 2020. (Doc. 44 at 1; *see also* Doc. 3 at 30.)

of wound certified specialists," the wound became "more and more infected." (*Id.* at 11 (quotation marks omitted).)

On May 31, 2020, Plaintiff submitted "a grievance concerning the gunshot wound … and multiple other medical injuries," indicating that "he was not being treated for his medical needs."[7] (*Id*. at 11.)

Defendants "denied [Plaintiff] access to the courts" by not allowing him to attend hearings on "multiple motions for medical furloughs" that his criminal defense counsel filed. (*Id.*) After defense counsel "photographed his injuries and was preparing a lawsuit against the jail," Plaintiff's jail medical records were "tampered with in an attempt to destroy or hide evidence" of constitutionally inadequate medical care. (*Id.* at 9, 12.) Defendant Mohr "signed off" on a form that made it appear as though Plaintiff had received no medical care from June to October 2020.[8] (*Id.* at 11.)

On November 6, 2020, "after many medical requests and grievances about the lack of medical treatment," Plaintiff "collapsed." (*Id.* at 12.) Fellow inmates insisted that Plaintiff receive treatment "before he died." (*Id.*) He was taken to the

---

[7] In his May 31, 2020 grievance, which he filed as a supplement to his FAC, Plaintiff stated that since his arrival at the OCDC, he had "not received medical attention" for his gunshot wound, and that Defendant Barela and her staff were "still showing deliberate indifference with the type of care [he] need[ed]." (Doc. 6 at 2.) According to records attached to his Motion, Plaintiff submitted another grievance on June 4, 2020, in which he wrote that he had "swelling and [severe] pain in [his] left arm due to [his] gunshot wound [that] started on June 2, 2020." (Doc. 45 at 14.) Medical records attached to Plaintiff's FAC further indicate that Plaintiff was admitted to the GCRMC for a "developing abscess" or "cellulitis" in his left forearm on June 5, 2020, but that he escaped from the GCRMC on the evening of June 6, 2020. (*See, e.g.*, Doc. 3 at 217-18, 220-21, 226, 229.) I take judicial notice that Plaintiff was rearrested on June 8, 2020. *See New Mexico v. Dirickson*, M-38-FR-2020-00240 (Otero County Magistrate Court, State of New Mexico, Returned Arrest Warrant filed June 8, 2020).

[8] However, it appears that Plaintiff was ultimately able to obtain at least some records documenting medical care he received at the OCDC in June and July 2020. (*See* Doc. 51 at 8-14.)

GCRMC on November 7, 2020, where he was treated for congestive heart failure with symptoms of lower extremity edema and shortness of breath.[9] (*Id.* at 12, 15.)

Plaintiff "suffered excruciating physical pain and deterioration of his health" due to the constitutionally inadequate medical care he received. (*Id.* at 10.) He "was denied adequate medical care because the [Board does] not have adequate policies to ensure that [the OCDC] was adequately funded and properly staffed[.]" (*Id.* at 9.) Defendants Sisler, Sifuentes, and Barela "conspired together to deny [Plaintiff] adequate medical care," and Defendants Sifuentes, Barela, and Mohr "acted as gatekeepers" but "were not medically trained to determine the seriousness and severity of medical needs." (*Id.* at 11, 13.)

Based on these allegations, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of "5th Amendment: Equal Protection, Delay and Denial of Medical Care," "8th Amendment: Medical Deliberate Indifference/Cruel and Unusual Punishment," and "14th Amendment: Pretrial Detainee/Due Process Clause." (*Id.* at 8.)

On December 12, 2024, the Court directed Defendants the Board, Sisler, Sifuentes, Barela, Mohr, and Sanchen to answer the SAC, and dismissed Plaintiff's claims against the twenty-seven other Defendants.[10] (Doc. 26 at 3-5, 7.) The County Defendants filed their answer on February 19, 2025. (Doc. 35.)

---

[9] According to medical records attached to the FAC, Plaintiff's lower extremity swelling began three days earlier, on November 4, 2020. (Doc. 3 at 267, 303.)

[10] The Court gave Plaintiff thirty days to file amended claims against the twenty-seven Defendants it dismissed. (Doc. 26 at 7.) However, to date, Plaintiff has filed no such claims, and the time for him to do so has long since expired.

On March 3, 2025, the County Defendants filed their Motion for Summary Judgment, asserting that the statute of limitations bars Plaintiff's claims because the claims accrued more than three years before he filed this action.[11] (Doc. 36.) Plaintiff responded in opposition to the Motion on May 2, 2025, and Defendants replied in support of it on May 9, 2025. (Docs. 44, 46.) In addition, on June 2, 2025, Plaintiff filed a verified surreply in opposition to Defendants' Motion without the Court's leave.[12] (Doc. 49.)

On May 2, 2025, the same day he responded to the County Defendants' Motion, Plaintiff filed his verified Motion to Apply the Equitable Tolling Doctrine. (Doc. 45.) In his Motion, Plaintiff argues that even if his claims were untimely filed, which he denies, the Court should equitably toll the applicable statute of limitations. (*Id*.) Defendants responded in opposition to Plaintiff's Motion on May 16, 2025, and Plaintiff filed a verified reply in support of it on June 23, 2025. (Docs. 47, 51.)

---

[11] The County Defendants did not raise the affirmative defense of the statute of limitations in their answer, instead asserting it for the first time in their Motion, which they filed about two weeks later. (Docs. 35, 36.) But while "the best procedure is to plead an affirmative defense in an answer or amended answer," courts need not impose "a strict requirement that the answer be amended before raising a defense in a motion for summary judgment." *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006). Rather, courts "need only apply the same standards that govern motions to amend when [they] determine whether the defendant should be permitted to constructively amend the answer by means of the summary-judgment motion." *Id.* (quotation marks omitted). Here, the standards governing motions to amend indicate that the Court should permit Defendants to constructively amend their answer by asserting a statute of limitations defense in their Motion. "The court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2); the constructive amendment does not unfairly prejudice Plaintiff; the County Defendants have not unduly delayed, acted with "bad faith or dilatory motive," or failed to cure deficiencies by amendments previously allowed; and, the amendment is not wholly futile. *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[12] Under Local Rule 7.4(b), "[t]he filing of a surreply requires leave of the Court." D.N.M.LR-7.4(b). Plaintiff, though a *pro se* litigant, is required to follow this "simple, nonburdensome" local rule. *Bradenburg v. Beaman*, 632 F.2d 120, 122 (10th Cir. 1980). Because Plaintiff failed to seek leave to file his surreply, it is not properly before the Court. But even if it were, the surreply would not change the reasoning or recommendations herein, because it appears to be based on a misunderstanding of the County Defendants' position. Specifically, in his surreply, Plaintiff argues that the Court should reject Defendants' purported position that the statute of limitations *expired* in March 2020. (Doc. 49 at 3.) In fact, however, Defendants' position is that Plaintiff's claims *accrued* in or shortly after March 2020 and that the statute of limitations expired three years later. (Docs. 36, 46.)

## II. ANALYSIS

### A.    Applicable Legal Standards

As a preliminary matter, I note that the nature of the County Defendants' Motion is not entirely clear. The Motion is entitled "Motion for Summary Judgment," and in it, Defendants list "Undisputed Material Facts" in accordance with Federal Rule of Civil Procedure 56(a) and this Court's corresponding Local Rule. (Doc. 36 at 1-3); D.N.M.LR-Civ. 56.1(b). However, in the Motion, Defendants recite the legal standards governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6); and, Defendants' Undisputed Material Facts are drawn from the unverified allegations in Plaintiff's SAC. (*Id.* at 2-4.)

Despite this lack of clarity, I conclude that the County Defendants' Motion must be analyzed as one for summary judgment. Initially, Plaintiff and the Court are entitled to take Defendants at their word when they call their motion one for summary judgment. Further, Plaintiff's and Defendants' Motions must be decided together because the issues they raise are inextricably intertwined[13]; the parties have submitted exhibits along with their briefs on Plaintiff's Motion; and generally, when a court "considers documents outside the pleadings … it must convert the motion to dismiss into a motion for summary judgment."[14] *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024); Fed. R. Civ. P. 12(d). Thus, even if the County Defendants did not actually intend their Motion to be one for summary judgment, the Court should treat it as one.[15]

---

[13] Specifically, in his Motion, Plaintiff seeks equitable tolling of the statute of limitations in an attempt to defeat the County Defendants' argument, in their Motion, that the statute of limitations bars Plaintiff's claims. (Docs. 36, 45.)

[14] Courts may "consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic," without converting a motion to dismiss into a motion for summary judgment. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). But this exception to the general rule requiring conversion is not at issue here.

[15] When converting a motion to dismiss into a motion for summary judgment, courts must "give the parties a reasonable opportunity to accumulate and present all relevant evidence." *Cuervo*, 112 F.4th at 1312; Fed. R. Civ. P.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (quotation marks omitted); Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotation marks and brackets omitted). Only material factual disputes preclude the entry of summary judgment. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). If there is a genuine dispute as to material facts, the Court views the facts in the light most favorable to the nonmovant. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, the Court will not draw "unreasonable inferences that are unsupported by the record." *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017).

A summary judgment movant bears the initial burden to show the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). When the nonmovant would bear the burden of proof at trial, the movant may meet its initial summary judgment burden by submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or by demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019).

---

12(d). Here, the title of and undisputed facts listed in the County Defendants' Motion gave Plaintiff notice and a reasonable opportunity to gather and present all relevant evidence. In addition, the parties clearly availed themselves of the opportunity to gather and present their evidence in briefing Plaintiff's Motion.

But when the movant would bear the burden of proof at trial, its initial summary judgment burden is "intensified," and it must establish all of the essential elements of its claim or defense as a matter of law. *Donner v. Nicklaus*, 778 F.3d 857, 876 (10th Cir. 2015). If the movant meets its initial summary judgment burden, "the burden then shifts to the nonmovant," *Tesone*, 942 F.3d at 994, who must "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant … by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (quotation marks and citations omitted).

**B.    Plaintiff's gunshot-wound claims are untimely as a matter of law, but his remaining claims are not.**

"Congress did not provide a statute of limitations for actions," like Plaintiff's, brought under 42 U.S.C. § 1983. *Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022). Rather, "a federal court looks to the law of the forum state to determine the applicable statute of limitations[.]" *Id*. Typically, federal courts apply "the state statute of limitations for personal injury claims." *Id.* (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014)). Thus, "[f]or § 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims." *Id.* (quoting *Varnell*, 756 F.3d at 1212); *see* N.M. Stat. Ann. § 37-1-8 (establishing three-year limitations period for personal injury claims).

But while state law provides the statute of limitations for Section 1983 claims, "[f]ederal law determines the date on which the claim accrues and, therefore, when the limitations period starts to run." *Myers v. Koopman*, 738 F.3d 1190, 1194 n.2 (10th Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Under federal law, a Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated," *Smith v.*

9

*City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998), "or when the plaintiff's right to resort to federal court was perfected." *Herrera*, 32 F.4th at 990 (quotation marks omitted).

"The statute of limitations is an affirmative defense[.]" *Id.* at 991; Fed. R. Civ. P. 8(c)(1). When a defendant moves for summary judgment based on an affirmative defense, it bears the initial burden to "demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024), *cert. denied*, 146 S. Ct. 90 (2025); *Donner*, 778 F.3d at 876.

### 1.     Plaintiff's Claims Based on Deliberate Indifference to Serious Medical Needs

In his SAC, Plaintiff asserts two sets of claims alleging deliberate indifference to serious medical needs in violation of his Eighth and Fourteenth Amendment rights: (1) claims that Defendants provided him with inadequate medical care for the gunshot wound to his neck; and, (2) claims that Defendants unduly delayed in providing him with access to adequate medical care for an emergent cardiac condition. (Doc. 22.) To assess the timeliness of these claims, the Court must first identify the essential elements of the alleged constitutional violations and then determine the dates by which these elements were satisfied. *See Smith*, 149 F.3d at 1154.

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment "include[s] an entitlement to a certain minimum standard of medical care while incarcerated." *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). And the "Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates." *Lance v. Morris,* 985 F.3d 787, 793 (10th Cir. 2021). Thus, though Plaintiff was a pretrial detainee rather than a convicted prisoner at the relevant times, (Doc. 22 at 8), Eighth Amendment standards apply to his claims based on delayed and inadequate medical care.

10

Prison officials violate the Eighth Amendment "when they act with deliberate indifference to an inmate's serious medical needs." *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quotation marks omitted). The deliberate indifference test has objective and subjective components. *Id.*; *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). The objective component "examines whether the prisoner's medical condition was sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Al-Turki*, 762 F.3d at 1192 (quotation marks omitted). A medical condition is "sufficiently serious" when "the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022). A need for immediate care can also be sufficiently serious if delay would result in "substantial harm," such as "lifelong handicap, permanent loss, or considerable pain." *Est. of Beauford*, 35 F.4th at 1262.

In general, the subjective component of a deliberate indifference claim is satisfied when the plaintiff shows that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component of a claim of deliberate indifference to serious medical needs, in particular, "can be satisfied under two theories," in which either (1) a medical professional "fail[s] to properly treat a serious medical condition," or (2) "a gatekeeper … prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment[.]"[16] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023).

---

[16] The first type of deliberate indifference

11

For purposes of the present Motions, the County Defendants do not dispute the timeline Plaintiff alleges with respect to his claims that Defendants were deliberately indifferent to his gunshot wound. (Doc. 36 at 2-3.) According to this timeline, which I will accept as true, on March 12, 2020, the GCRMC instructed the OCDC to provide Plaintiff with daily wound care by a wound care certified provider, either at the OCDC or the GCRMC, but Defendant Sisler directed staff members to disregard these instructions. (Doc. 22 at 8.) Plaintiff did not receive proper care for his wound, which became severely infected and caused him great pain. (*Id.* at 8-10.) Thus, on May 31, 2020, Plaintiff filed a grievance asserting that his gunshot wound was not being treated and that Defendants were "showing deliberate indifference" to the care he needed. (*Id.* at 11; Doc. 6 at 2.) At first blush, this timeline suggests that Plaintiff's gunshot-wound claims accrued no later than May 31, 2020, by which time he knew or should have known that Defendants' improper treatment of the wound violated his Eighth and Fourteenth Amendment rights. If so, the claims are clearly untimely, because Plaintiff did not file any of his complaints until more than three years later. (Docs. 1, 3, 22.)

Plaintiff argues that his gunshot-wound claims are nevertheless timely because the events forming the basis of these claims "were still happening all the way to November of 2020 and well past." (Doc. 44 at 3.) In support, Plaintiff contends that he was transported to the GCRMC on

---

may occur, for example, when a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, completely denies care although presented with recognizable symptoms which potentially create a medical emergency, or responds to an obvious risk with treatment that is patently unreasonable.

*Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1154 (10th Cir. 2022) (quotation marks omitted). But "a medical professional has not acted with deliberate indifference if he or she merely negligently treats or diagnoses an inmate—even if that provided care would constitute medical malpractice." *Id.* As for "second type of conduct—that of 'gatekeepers,'" the subjective component of the deliberate indifference test is satisfied "[w]hen prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.*

November 7, 2020, for emergency treatment due to "discoloration, swelling, redness, and severe pain and suffering." (*Id.* at 4.) But this argument fails for three reasons.

First, Plaintiff's argument appears to conflate his gunshot-wound claims with his cardiac-condition claims. The former claims concern a gunshot wound to the neck and subsequent infection and are based on conduct that began in March 2020, while the latter claims concern an emergent cardiac condition with symptoms of shortness of breath and lower-extremity edema and are based on conduct that occurred in November 2020. (*See* Doc. 22 at 8-9, 12-13, 15.) That the latter claims may have been timely, as discussed below, does not make the former claims timely as well, even though both sets of claims arise out of the same constitutional provisions and are asserted in the same pleading.[17]

Second, a Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated," *Smith*, 149 F.3d at 1154, even if "the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391. "[O]therwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of [limitations] in the sole hands of the party seeking relief." *Id.* Thus, to the extent that Plaintiff continued to suffer ill effects from Defendants' deliberate indifference to his gunshot wound through and beyond November 2020, this does not change the date on which his claims accrued.

---

[17] Neither Plaintiff nor the County Defendants present any evidence or argument tending to show that Defendants' improper care of Plaintiff's gunshot wound beginning in March 2020 caused him to suffer an emergent cardiac condition in November 2020, nor is such a causal connection obvious. But even if it were, Defendants' alleged failure or refusal to follow the GCRMC's discharge instructions with respect to Plaintiff's gunshot wound on the one hand, and their allegedly unconstitutional delay in responding to his complaints of lower extremity swelling and shortness of breath on the other, clearly constitute two distinct series of unlawful acts. Thus, the Court must analyze the timeliness of Plaintiff's respective claims arising out of these two series of acts separately.

Third, it is true that, construed liberally, Plaintiff's argument can be read to invoke the continuing violation doctrine, which yields a later accrual date. But even so, his gunshot-wound claims are untimely as a matter of law. "[T]he continuing violation doctrine applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*, as opposed to conduct that is a discrete unlawful act."[18] *Herrera*, 32 F.4th at 993 (emphasis in original) (quotation marks omitted). Under this doctrine, a claim accrues on the date the last act in the series of unlawful acts occurred. *See id.*; *see also Burkley v. Corr. Healthcare Mgmt. of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005) ("The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period.").

On the present record, there is at least a genuine factual dispute regarding whether the continuing violation doctrine applies to Plaintiff's gunshot-wound claims, because these claims appear to be predicated on a series of separate acts that together constitute one unlawful act. Specifically, the claims appear to be predicated on multiple occasions on which unqualified individuals at the OCDC improperly cared for Plaintiff's gunshot wound, cumulatively resulting in severe infection. However, the last date on which Plaintiff has either alleged or presented evidence tending to show that an unqualified individual—Defendant Sanchen—cared for the wound was July 18, 2020, as evidenced by a medical note Plaintiff attached to his reply in support of his Motion. (Doc. 22 at 12; Doc. 51 at 14.) Based on this undisputed evidence, the continuing

---

[18] "An important caveat to the continuing violation doctrine, however, is that it is triggered by continual unlawful *acts*, not by continual *ill effects* from the original violation." *Herrera*, 32 F.4th at 993 (emphases added). The continuing violation doctrine is available in Section 1983 cases. *Id.* at 993-94.

14

violation doctrine dictates that Plaintiff's gunshot-wound claims accrued no later than July 18, 2020. And as explained below, even using this later accrual date, the claims remain untimely.

The operative complaint in this matter is Plaintiff's SAC. *May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990); *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005). And Plaintiff filed the SAC on September 3, 2024, well outside the three-year limitations period ending on July 18, 2023. (Doc. 22.)

Of course, this begs the question whether the gunshot-wound claims in the SAC relate back to the filing date of the FAC. *See* Fed. R. Civ. P. 15(c); *May*, 929 F.3d at 1228–29; *Gilles*, 906 F.2d at 1389. Under Federal Rule of Civil Procedure 15(c)(1)(B), an amended pleading relates back to the filing date of an earlier pleading asserted against the same party when "the amendment asserts a claim … that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the [earlier] pleading." Fed. R. Civ. P. 15(c)(1)(B). Under Rule 15(c)(1)(C), in turn, an amendment that adds a new party relates back when it satisfies Rule 15(c)(1)(B), *and*

> within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment … received such notice of the action that it will not be prejudiced in defending on the merits[,] and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). Notice to a new defendant under Rule 15(c)(1)(C) "need not be formal." Fed. R. Civ. P. 15, Advisory Committee Notes to 1966 Amendment. But the new defendant must have had either actual or constructive knowledge "that, absent some mistake, the action would have been brought against him." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010). Rule 15(c) "mandates relation back once [its] requirements are satisfied." *Id.* at 553.

Here, both the FAC and the SAC assert claims arising out of OCDC personnel's alleged failure or refusal to follow the GCRMC's discharge instructions regarding the care of Plaintiff's gunshot wound. (*Compare* Doc. 3 *with* Doc. 22.) Thus, at the very least, the SAC's gunshot-wound claims against Defendants Sisler and the Board relate back to the filing date of the FAC under Rule 15(c)(1)(B), because these Defendants were named in both complaints. But even if all of the gunshot-wound claims in the SAC relate back to the filing date of the FAC, they remain untimely, because Plaintiff did not file the FAC until October 6, 2023, more than three years after the claims accrued on July 18, 2020.

Additionally, no reasonable factfinder could conclude that any of Plaintiff's claims relate back to the June 30, 2023, filing date of his original complaint. In his original complaint, Plaintiff made no attempt at all to set out the conduct, transactions, or occurrences forming the basis of any of his claims. (Doc. 1.) Rather, his original complaint was a "skeleton petition," pleading claims wholly "[in]capable of determination," which he only later amended "to supply requisite particulars." *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 725 (10th Cir. 2011). As such, it cannot defeat the statute of limitations, even if it was filed within the statutory period. *Id.*

In sum, the County Defendants have met their summary-judgment burden to show that, absent equitable tolling, the applicable three-year statute of limitations bars Plaintiff's Section 1983 gunshot-wound claims as a matter of law. Applying the continuing violation doctrine, the undisputed facts establish that these claims accrued no later than July 18, 2020, the last date on which Plaintiff has alleged or presented evidence to show that an unqualified individual cared for

his wound. Yet Plaintiff did not attempt to set out the conduct, transactions, and occurrences forming the basis of the claims until he filed his FAC on October 6, 2023, over three years later.[19]

However, the County Defendants fail to make an equally successful showing with respect to Plaintiff's cardiac-condition claims. Based on the allegations in the SAC and the record evidence, which Defendants do not challenge, these claims could not have accrued until November 4, 2020, at the earliest, when Plaintiff began to experience the symptoms of an emergent cardiac condition, *i.e.*, lower extremity edema and shortness of breath. (Doc. 3 at 267, 303; Doc. 22 at 12, 15.) Of course, it is true that Plaintiff did not file the operative complaint until nearly four years later, on September 3, 2024. (Doc. 22.) But he filed his FAC less than three years later, on October 6, 2023. (Doc. 3.) And Defendants have wholly failed to address whether the cardiac-condition claims in the SAC relate back to the filing date of the FAC. (*See* Docs. 36, 46.)

Indeed, on the present record, these claims *do* relate back as to Defendants Sisler and the Board, and may relate back as to Defendants Sifuentes, Barela, Sanchen, and Mohr as well. In both the FAC and the SAC, Plaintiff asserted constitutional claims arising out of the care he received for his November 2020 cardiac condition. (*Compare* Doc. 3 at 10 *with* Doc. 22 at 12, 15.) This satisfies Rule 15(c)(1)(B) and establishes that the cardiac-condition claims in the SAC relate back to the filing date of the FAC as to Defendants Sisler and the Board, who were named in both complaints.

---

[19] I note that Plaintiff would fare no better under the "variation" of the continuing violation doctrine known as the "repeated violation doctrine," which "*divides* what might otherwise represent a single, time-barred cause of action into several separate claims, at least one of which accrues within the limitations period prior to suit." *Herrera*, 32 F.4th at 995 (emphasis in original). "[U]nder the repeated violation doctrine, each new violation restarts the statute of limitations, but damages are available only for the violations occurring within that limitations period." *Id.* On the present record here, the last alleged gunshot-wound violation—*i.e.*, the last time an unqualified individual cared for Plaintiff's wound—occurred on July 18, 2020, more than three years before he filed his FAC. Thus, even divided into multiple separate claims, none of Plaintiff's gunshot-wound claims would be timely.

Further, although Plaintiff added cardiac-condition claims against Defendants Sifuentes, Barela, Mohr, and Sanchen for the first time in his SAC, the present record allows for the possibility that these claims relate back to the filing date of the FAC under Rule 15(c)(1)(C). It is undisputed that Defendants Sisler, Sifuentes, Barela, Mohr, and Sanchen all worked at the OCDC, which Defendant the Board operated, during the relevant time period. And though the FAC does not identify Defendants Sifuentes, Barela, Mohr, or Sanchen by name, it does include allegations that appear to involve their acts and omissions. Consequently, an investigation by Defendants Sisler and the Board into the FAC's allegations could have given Defendants Sifuentes, Barela, Mohr, and Sanchen timely notice of Plaintiff's claims and actual or constructive knowledge that, but for some error, Plaintiff would have asserted claims against them. In these circumstances, and in the absence of even the most cursory argument from Defendants on this issue, I cannot conclude that the cardiac-condition claims in the SAC do not relate back to the filing date of the FAC and are therefore untimely as a matter of law. The County Defendants have failed to show that they are entitled to summary judgment on these claims.

### 2. Plaintiff's Claims Based on the Right of Access to the Courts and Equal Protection

In his SAC, Plaintiff claims that Defendants violated his right of access to the courts by not allowing him to attend hearings on motions for medical furloughs filed by his criminal defense counsel, and by tampering with his jail medical records to destroy or hide evidence of constitutionally inadequate medical treatment. (Doc. 22 at 11-12.) Plaintiff also appears to assert that Defendants violated his right to "[e]qual protection," though it is unclear how he claims they did so.[20] (*Id.* at 8.)

---

[20] The right of access to the courts arises out of various constitutional provisions including the First and Fourteenth Amendments, *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Davis v. Arkansas Valley Correctional Facility*,

In their Motion, the County Defendants neither argue nor present any evidence to show that they are entitled to judgment as a matter of law on Plaintiff's access-to-the-courts and equal protection claims, either because these claims are time barred or for any other reason. (Docs. 36, 46.) Indeed, Defendants do not mention these claims at all. (*See generally id.*) Thus, the Court should deny the County Defendants' Motion to the extent that it seeks summary judgment on Plaintiff's access-to-the-courts and equal protection claims.[21]

**C.    Plaintiff is not entitled to equitable tolling of the statute of limitations.**

Finally, in his Motion, Plaintiff argues that the Court should equitably toll the statute of limitations with respect to any of his claims that would otherwise be time-barred. (Doc. 45.) The County Defendants disagree, arguing that Plaintiff's evidence is insufficient to establish his entitlement to equitable tolling. (Doc. 47.) At this juncture, I limit my analysis of the parties' equitable-tolling arguments to Plaintiff's gunshot-wound claims, which are the only ones subject to summary judgment based on the statute of limitations absent equitable tolling.[22] *See* Section II.B., *supra*.

---

99 F. App'x 838, 841 n.6 (10th Cir. 2004), while the right to equal protection arises out of the Fourteenth Amendment's Equal Protection Clause. U.S. Const. amend. XIV; *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).

[21] Notably, the SAC appears to be devoid of allegations that Defendants treated Plaintiff differently from other similarly situated individuals, as would be required to successfully state an equal protection claim. (*See generally* Doc. 22); *Lucas*, 58 F.4th at 1146 (noting that equal protection clause prohibits purposeful discrimination against a group or class of one compared to others similarly situated). Thus, in recommending that the Court deny the County Defendants' Motion as to Plaintiff's equal protection claims, I do not intend to foreclose the possibility that these claims may be subject to dismissal on a separately filed dispositive motion or *sua sponte* review under 28 U.S.C. § 1915A.

[22] In his Motion, Plaintiff does not argue that the Court should toll the applicable statute of limitations on the basis of any state-law statutory provision. (*See generally* Docs. 45, 51.) I therefore do not consider whether or to what extent statutory tolling might otherwise apply. *Cf., e.g., Roberts v. Barreras*, 484 F.3d 1236, 1241-44 (10th Cir. 2007) (affirming district court's rejection of plaintiff's equitable-tolling argument but reversing and remanding for further consideration of plaintiff's statutory-tolling argument).

State law governs equitable tolling in Section 1983 cases. *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). Under New Mexico law, equitable tolling is "a non-statutory tolling principle" available "when exceptional circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations." *Snow v. Warren Power & Mach., Inc.*, 2015-NMSC-026, ¶ 24, 354 P.3d 1285, 1290; *Little v. Baigas*, 2017-NMCA-027, ¶ 12, 390 P.3d 201, 207. The party seeking tolling bears the burden of showing that he is entitled to such relief. *Dow v. Chilili Co-op. Ass'n*, 1986-NMSC-084, ¶ 11, 728 P.2d 462, 464; *Stringer v. Dudoich*, 1978-NMSC-071, ¶ 3, 583 P.2d 462, 463.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented him from filing suit "throughout the entire length of the statutory period." *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 16, 306 P.3d 524, 531 (citation omitted); *Roberts v. Barreras*, 484 F.3d 1236, 1242 (10th Cir. 2007) (applying New Mexico law). "Where a plaintiff fails to produce sufficient facts showing that either element has been met, equitable tolling should not be applied." *Little*, 2017-NMCA-027, ¶ 12, 390 P.3d at 207.

In his Motion, Plaintiff presents evidence of three circumstances that he claims support his request for equitable tolling: (1) lack of access to legal materials or assistance at the OCDC; (2) confiscation or destruction of his legal documents and lack of access to the law library at the Reception and Diagnostic Center ("RDC") of the New Mexico Corrections Department; and, (3) his serious medical conditions. (Doc. 45 at 2–3.) However, as Defendants argue, this evidence is insufficient to create a genuine issue of material fact regarding whether Plaintiff was diligently pursuing his gunshot-wound claims but was prevented from filing them throughout the statutory period.

With respect to his claims that he lacked access to legal documents and resources, Plaintiff attests that he had no access to legal materials or assistance at the OCDC, and that at the RDC, all of his legal documents were confiscated or destroyed and he had no access to the law library. (Doc. 45 at 2-3; Doc. 51 at 2.) Plaintiff presents the following timeline pertinent to these attestations:

- From March 1, 2020, to December 21, 2021, Plaintiff was housed at the OCDC, (Doc. 45 at 2; Doc. 51 at 2);

- On December 21, 2021, Plaintiff was transferred to the RDC, (Doc. 45 at 2; Doc. 51 at 2; *see also* Doc. 22 at 13);

- In May 2022, Plaintiff returned to the OCDC, (Doc. 45 at 2);

- From August to September 2022, Plaintiff was again transferred to the RDC, (*id.* at 3);

- From September 2022 to March 12, 2023, Plaintiff was transferred to a "federal holding" facility, (*id.*);

- On March 12, 2023, Plaintiff returned to the RDC for a third time, (*id.*); and,

- In May 2023, Plaintiff was transferred to the Western New Mexico Correctional Facility ("WNMCF"), (Doc. 22 at 13).

As discussed in Section II.B., *supra*, Plaintiff's gunshot-wound claims accrued no later than July 18, 2020. Thus, to be entitled to equitable tolling, the statutory period throughout which Plaintiff must show that he was prevented from filing these claims ran from July 18, 2020, to July 18, 2023. However, accepting his cognizable evidence as true, Plaintiff's lack of access to legal documents and resources does not account for his failure to act throughout this period. In particular, Plaintiff's evidence fails to address whether he lacked access to legal documents and resources while he was at the federal holding facility and the WNMCF, even though he was housed

at these facilities for roughly seven to eight months within the statutory period, *i.e.*, from September 2022 to March 12, 2023, and from May 2023 to July 18, 2023. Plaintiff does broadly declare that "every facility he was housed at[,] the law library was non-exist[e]nt or all together missing." (Doc. 45 at 3.) But he does not specifically discuss or present evidence regarding the legal resources available at the federal holding facility and the WNMCF, and in particular does not address whether these facilities offered inmates legal resources other than a law library, and if so, why those resources were nevertheless so inadequate as to constitute an extraordinary circumstance that prevented him from timely filing his claims.[23]

Likewise insufficient is Plaintiff's attestation that he could not timely file suit because "he was having to fight for his life and dealing with severe pain" from serious medical conditions including injuries from a July 2019 motorcycle accident, his February 2020 gunshot wound, and his November 2020 cardiac condition. (Doc. 45 at 3; *see* Doc. 3 at 253; Doc. 44 at 1; Doc. 51 at 13.) Plaintiff presents no cognizable evidence to indicate that he was so incapacitated from these conditions that he could not pursue his claims for the entire period from July 18, 2020, to July 18, 2023. Among other things, he does not address the state of his health while he was in federal holding from September 2022 to March 2023, or at the WNMCF from May 2023 to the end of the statutory period. Further, it is clear that Plaintiff's conditions did not wholly incapacitate him from their inception through July 18, 2023, because he was undisputedly well enough to (1) submit multiple grievances to the OCDC from April to July 2020, (2) escape from the GCRMC on June 6, 2020, and (3) file his original "skeleton" complaint on June 30, 2023. (Doc. 1; Doc. 3 at 218,

---

[23] Some of the pages of Plaintiff's verified reply in support of his Motion appear to be missing from the copy he filed with the Court. (*See* Doc. 51.) The hand-written page numbers are not consecutive, and the text is discontinuous from one page to the next. (*Id.*) However, the docket reflects that the Court forwarded a copy of the reply, as filed, to Plaintiff on June 23, 2025, and to date, Plaintiff has not supplemented the record with any omitted pages.

361; Doc. 6 at 2; Doc. 45 at 14; Doc. 51 at 4–7, 15.) For these reasons, Plaintiff has failed to show a genuine factual dispute regarding whether some extraordinary circumstance stood in his way and prevented him from filing suit throughout the entire length of the statutory period.

In addition, Plaintiff has failed to present evidence that he diligently pursued his claims, including while he was in federal holding and at the WNMCF. He does, as just noted, present evidence that he submitted grievances to the OCDC from April to July 2020. And he also presents evidence that he requested medical records from Otero County on or about July 20, 2023, and April 1, 2024. (Doc. 45 at 6-13.) Critically, however, he does not explain what actions, if any, he took to pursue his gunshot-wound claims between August 2020 and the end of the statutory period on July 18, 2023. (*Id.*)

In sum, the County Defendants have met their initial summary-judgment burden on the issue of equitable tolling by showing that Plaintiff's evidence is insufficient to establish his entitlement to such relief. *Tesone*, 942 F.3d at 994. Thus, and because he bears the burden of persuasion on this issue, the summary-judgment burden shifted to Plaintiff to present cognizable evidence of specific facts that would entitle him to equitable tolling. *Id.*; *Adler*, 144 F.3d at 671; *Dow*, 1986-NMSC-084, ¶ 11, 728 P.2d at 464; *Stringer*, 1978-NMSC-071, ¶ 3, 583 P.2d at 463. Plaintiff has failed to meet that burden because he has not presented cognizable evidence to show that he was diligently pursuing his gunshot-wound claims, but some extraordinary circumstance prevented him from filing them throughout the length of the statutory period. For these reasons, and because the claims were filed after the statute of limitations expired as discussed in Section II.B., *supra*, the Court should grant Defendants the Board, Sisler, Sifuentes, Barela, Sanchen, and Mohr summary judgment on Plaintiff's gunshot-wound claims.

### III. CONCLUSION

For all of the above reasons, I RECOMMEND that: (1) the County Defendants' Motion for Summary Judgment (Doc. 36) be GRANTED IN PART and DENIED IN PART; (2) Plaintiff's Motion to Apply the Equitable Tolling Doctrine (Doc. 45) be DENIED; (3) summary judgment in favor of Defendants the Board, Sisler, Sifuentes, Barela, Sanchen, and Mohr be GRANTED on Plaintiff's Section 1983 claims alleging deliberate indifference to his pre-detention gunshot wound in violation of the Eighth and Fourteenth Amendments; and, (4) summary judgment in Defendants' favor be DENIED on Plaintiff's cardiac-condition, access-to-the-courts, and equal protection claims.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**